# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

JHONNY JORGE JESUS ACOSTA ORTEGA,

    Petitioner,

    v.        No. 2:20-cv-00522-KWR-KBM

UNITED STATES IMMIGRATION
AND CUSTOMS ENFORCEMENT,
COREY PRICE, DIRECTOR MATTHEW T. ALBENCE,
DORA ORZCO, and CHAD WOLF,

    Respondents.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court upon Petitioner's Motion for Temporary Restraining Order, filed May 29, 2020 **(Doc. 2)**. Petitioner requests that the Court issue a temporary restraining order or preliminary injunction directing Respondents to release him from the Otero County Processing Center. Petitioner asserts that he is vulnerable to COVID-19 and requests release because there are no adequate measures that can ensure he avoids exposure while in detention. The Court ordered briefing. Having reviewed the parties' pleadings and the applicable law, the Court finds that Petitioner's motion is not well-taken and, therefore, is **DENIED.**

## BACKGROUND

**I.    Petitioner's history, characteristics, and prior removals.**

Petitioner is a noncitizen detainee in the process of being removed from the United States and is being held by Immigration and Customs Enforcement (ICE) at the Otero County Processing Center ("Otero"). Petitioner's removal is apparently delayed while Respondents attempt to

schedule a flight to his home country, Peru. Petitioner recently completed a 138-day sentence for felony illegal reentry pursuant to 8 U.S.C. 1326. **Doc. 20, Ex. A at 35.** After completing that sentence, he was taken into ICE custody on April 6, 2020 for removal processing and was transferred to Otero.

On May 8, 2020. Otero medical staff tested the petitioner and other asymptomatic detainees for COVID-19. Petitioner tested negative. However, others in his cohort tested positive.

This will be Petitioner's fourth removal from the country. Petitioner has a lengthy criminal history. He has convictions or arrests for reckless driving, riding a bike under the influence, vandalism, DUI, burglary, entering a non-commercial dwelling, vehicle theft, and robbery. *Id.* **at 8.**

As of June 5, Petitioner was housed in a cell by himself. His housing unit had a total of seven detainees. Petitioner asserts in an affidavit that on June 21, 2020, he will be transferred back to a dormitory.

On November 24, 2008, petitioner was granted a voluntary departure from the United States by an immigration judge. On December 16, 2008, Petitioner departed to Peru. *Id.* **at ¶ 31.** On September 9, 2012, Petitioner unlawfully reentered the Untied States and was arrested and served an order of expedited removal. On October 25, 2012, Petitioner was removed to Peru. Petitioner unlawfully reentered the United States sometime after that. The removal order was reinstated on May 15, 2019 and he was removed a third time. *Id***. at 33.**

Petitioner unlawfully reentered the United States again on or about November 15, 2019. Defendant was convicted of illegal reentry in violation of 8 U.S.C. § 1326, served a 138-day sentence, and was transferred to ICE custody on April 6, 2020. After Petitioner was medically

cleared, as of June 5, 2020, ICE is attempting to reinstate the standing removal order once more and schedule a removal flight to Peru.

Petitioner is approximately 33 years old. He has hypertension and asserts he is obese. Petitioner asserts he arrived in the United States in 2001 when he was 14 years old on a visitor's visa. His parents live in Washington state, and his wife and child live in California.

## II. Otero's procedures to abate Covid-19 risk.

Respondents filed an affidavit detailing the procedures used to abate the risk of COVID-19 at the Otero Processing Center. *See* **Doc. 20-1, Ex. A** (Declaration of Deportation Officer, Jorge Zuzunagha). As of June 5, 2020, Otero is at 33 percent capacity and able to implement social distancing during recreation, meals, sleep, and other activities. *Id.* ¶¶ **7, 24**. Officials are able to assign detainees to beds that are separated by a distance of six feet. There is daily monitoring of the population percentage of each housing unit to allow for social distancing. Security monitors detainee movement to ensure detainees do not form crowds. CDC posters are displayed through the housing units that explain social distancing, hygiene practices, and information on COVID-19. *Id.* **at ¶ 7.**

The facility has one physician on site 24 hours per week but available on call 24 hours a day. A Nurse Practitioner is on site full time and on call 24 hours a day. *Id.* **at ¶7.**

Detainees are provided hygiene kits including soap and shampoo and have hand sanitizer and soap dispensers available. Cleaning crews clean an disinfect housing units and common areas with disinfection chemicals. *Id.* **at ¶20.** Detainees are provided two cloth masks to use, with the option to clean them by hand or send them to the laundry department, with replacement masks at no cost. *Id.*

ICE follows guidance issued by the CDC to safeguard those in its custody. *Id.* at ¶12. Each new detainee is screened for fever and respiratory illness on admission. *Id*. at ¶14. Detainees are asked whether they had close contact with a confirmed case in the past 14 days, and whether they have traveled in areas with sustained community transmission. New detainees are assigned to a staggered housing location for a 14 days medical observation to prevent them from congregating with the general population. *Id.* Detainees who have COVID-19 symptoms are separated from other and referred to a medical provider. *Id.* ¶15.

ICE epidemiologists track the outbreak of COVID-19, update infection prevention and control protocols, and issue guidance on the screening and management of potential exposure among detainees. *Id.* at ¶11.

Although Otero has had COVID-19 outbreaks, measures to contain COVID-19 appear to be working at the moment. As of August 16, 2020, Otero has zero active cases currently under isolation, zero detainee deaths, and a total of 150 confirmed COVID-19 cases. *See* https://www.ice.gov/coronavirus# (last accessed August 17, 2020)[1].

## LEGAL STANDARD

"[W]hen a temporary restraining order is sought on notice to the adverse party, it may be treated by the court as a motion for a preliminary injunction." 13 Moore's Federal Practice § 65.31 (2020); *see* Fed. R. Civ. P. 65. Given the nature of the requested relief (release from custody) and possible jurisdictional issues, the Court ordered briefing from the respondents. **Doc. 18.** Respondents received notice of Petitioner's motion for a temporary restraining order and filed a response opposing it. The Court, therefore, will treat Petitioner's motion as a request for a preliminary injunction.

---

[1] This website was cited in an affidavit provided by Respondents. *See* Deportation Officer Jorge Zuzunagha's Affidavit, **Doc. 20-1, Ex. A, at ¶ 29**. These numbers have been updated since Respondents filed their response.

"A preliminary injunction is an extraordinary remedy, the exception rather than the rule." *Mrs. Fields Franchising, LLC v. MFGPC*, 941 F.3d 1221, 1232 (10th Cir. 2019); Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 22 (2008)("[I]njunctive relief" is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."). To obtain a preliminary injunction, Petitioner must establish: "(1) a substantial likelihood of prevailing on the merits; (2) irreparable harm unless the injunction is issued; (3) that the threatened injury outweighs the harm that the preliminary injunction may cause the opposing party; *and* (4) that the injunction, if issued, will not adversely affect the public interest." *Dine Citizens Against Ruining Our Env't v. Jewell*, 839 F.3d 1276, 1281 (10th Cir. 2016) (*emphasis* added) (quoting *Davis v. Mineta*, 302 F.3d 1104, 1111 (10th Cir. 2002)). "Because a preliminary injunction is an extraordinary remedy, the movant's right to relief must be clear and unequivocal." *Id.* (quoting *Wilderness Workshop v. U.S. Bureau of Land Mgmt.*, 531 F.3d 1220, 1224 (10th Cir. 2008)).

Courts disfavor preliminary injunctions that "exhibit any of three characteristics: (1) it mandates action (rather than prohibiting it), (2) it changes the status quo, or (3) it grants all the relief that the moving party could expect from a trial win." *Mrs. Fields Franchising, LLC*, 941 F.3d at 1232 (quoting *Free the Nipple-Fort Collins*, 916 F.3d at 797). Because Petitioner's request for immediate release from Otero meets at least two disfavored categories, he faces "a heavier burden on the likelihood-of-success-on-the-merits and the balance-of-harms factors." *Id.* He must "make a strong showing that these [factors] tilt in [his] favor." *Id.*

## DISCUSSION

For the reasons stated below, the Court finds that Petitioner has not made a strong showing that his due process claim is substantially likely to succeed on the merits. Alternatively, the Court finds that Petitioner did not make a showing on the remaining preliminary injunction factors.

**I.       Writ of Habeas Corpus under § 2241 not appropriate vehicle for this Conditions of Confinement claim.**

Petitioner requests that the Court issue a writ of habeas corpus pursuant to § 2241 releasing him from detention for violation of his Fifth Amendment Due Process rights.  He argues that his continued detention in conditions that do not permit social distancing and do not provide for adequate hygiene, given his vulnerability, violates due process.

Respondents argue that habeas relief under § 2241 is not available here, because Petitioner essentially challenges his conditions of confinement.  The Court agrees.

Habeas relief is only available under § 2241 where the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States."  § 2241. "The fundamental purpose of a § 2241 habeas proceeding is to allow a person in custody to attack the legality of that custody, and the traditional function of the writ is to secure release from illegal custody.  Though the Supreme Court has not set the precise boundaries of habeas actions, it has distinguished between habeas actions and those challenging conditions of confinement.  [The Tenth Circuit] has endorsed this distinction." *Palma-Salazar v. Davis*, 677 F.3d 1031, 1035 (10th Cir. 2012) (internal citations and quotation marks omitted)

"It is well-settled law that prisoners who wish to challenge only the conditions of their confinement, as opposed to its fact or duration, must do so through civil rights lawsuits filed pursuant to 42 U.S.C. § 1983 or *Bivens v. Six Unknown Named Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971)—not through federal habeas proceedings." *Standifer v. Ledezma*, 653 F.3d 1276, 1280 (10th Cir. 2011); *Muhammad v. Close*, 540 U.S. 749, 750, 124 S.Ct. 1303, 158 L.Ed.2d 32 (2004) (generally "[c]hallenges to the validity of any confinement or to particulars

affecting its duration are the province of habeas corpus," whereas a civil rights action is the proper channel for "requests for relief turning on circumstances of confinement.").

"In this circuit, a prisoner who challenges the fact or duration of his confinement *and* seeks immediate release or a shortened period of confinement, must do so through an application for habeas corpus. In contrast, a prisoner who challenges the conditions of his confinement must do so through a civil rights action." *Palma-Salazar v. Davis*, 677 F.3d 1031, 1035 (10th Cir. 2012) (emphasis added and internal citations omitted). In other words, in the Tenth Circuit a habeas action is available to challenge the *underlying legal basis* for detention or the length of detention, but not conditions of confinement. *See, e.g., Spencer v. Haynes*, 774 F.3d 467, 469 (8th Cir. 2014) ("[i]f the prisoner is not challenging the *validity* of his conviction or the length of his detention, such as loss of good time, then a writ of habeas corpus is not the proper remedy.") (emphasis added) (citation omitted).

Here, as to his due process claim, Petitioner does not challenge the validity of his detention pending removal or the duration of his confinement. Rather, he asserts that the conditions of confinement are so unlawful as to mandate release. A conditions of confinement claim such as this is not appropriate in a § 2241 habeas action but must be asserted under § 1983 or *Bivens*. *See, e.g., Betancourt Barco v. Price*, No. 2:20-CV-350-WJ-CG, 2020 WL 2099890, at *6 (D.N.M. May 1, 2020) ("Accordingly, the Court finds that Plaintiffs are challenging the conditions of their detention, as opposed to its fact or duration, which is not appropriate under 28 U.S.C. § 2241."); *Basri*, No. 20-cv-00940-DDD, slip op. at 9  (D. Colo.) ("[I]t is the conditions, not the fact of his detention, he is challenging when he cites the undoubtedly dangerous *condition* of the spreading COVID-19 disease."); *Codner v. Choate*, No. 20-CV-01050-PAB, 2020 WL 2769938, at *6 (D.

7

Colo. May 27, 2020) ("As a result, the Court finds that petitioners attack the conditions of their confinement and not the fact or duration of their confinement.").

Moreover, a number of district courts in the Tenth Circuit have similarly concluded that a request for release because of COVID-19 is essentially a challenge to conditions of confinement and therefore habeas relief is not available under § 2241. The Court finds these cases and their reasoning persuasive. *Basri v. Barr*, 1:20-cv-00940-DDD, Doc. 28 at 3–11 (D. Colo., May 11, 2020), *cited in Aguayo v. Martinez*, No. 120CV00825DDDKMT, 2020 WL 2395638, at *2 (D. Colo. May 12, 2020); *Betancourt Barco v. Price*, No. 2:20-CV-350-WJ-CG, 2020 WL 2099890, at *6 (D.N.M. May 1, 2020) ("Although Plaintiffs are requesting immediate release, they are not challenging the legality or duration of their detention. At the core of their argument, they contend that the conditions of their detention at Otero are inadequate to protect them from exposure to COVID-19"); *Codner v. Choate*, No. 20-CV-01050-PAB, 2020 WL 2769938, at *4 (D. Colo. May 27, 2020) ("If a detainee's detention itself is unlawful, the remedy is release, which is why habeas permits release when a detainee challenges "the fact or duration" of confinement.. However, if detention itself is lawful, but the surrounding circumstances are not, release is not the only possible remedy: conditions can be improved to make them constitutional.") (internal citation omitted)**;** *see also Matos v. Lopez Vega*, No. 20-CIV-60784-RAR, 2020 WL 2298775, at *6 (S.D. Fla. May 6, 2020) ("Given that Petitioners are seeking to contest the conditions of their confinement, they cannot avail themselves of a petition for writ of habeas corpus."); *Archilla v. Witte*, No. 4:20-cv-00596-RDP-JHE, 2020 WL 2513648, at *19 (N.D. Ala. May 15, 2020) (noting that petitioners, who are seeking release from ICE custody due to the COVID-19 outbreak, are trying to shoehorn a conditions-of-confinement claim under section 2241).

Petitioner asserts that his habeas action is appropriate because the alleged unconstitutional conditions require release. However, as explained directly below, he has failed to show that release is the only available remedy to correct the alleged unconstitutional conditions of confinement.

## II. Due Process claim otherwise not substantially likely to succeed on the merits.

For the reasons stated below, the Court concludes that Petitioner has not shown that his Fifth Amendment due process claim is substantially likely to succeed on the merits.

### A. Petitioner failed to show that release is the only remedy available.

In lieu of filing a § 1983 to correct unconstitutional conditions of confinement, he filed a § 2241 asserting that no conditions of confinement could be constitutional. This decision to seek release under § 2241 poses a problem for the success of his conditions of confinement claim - he has failed to show why another, lesser remedy, such as altering the conditions of confinement is not available. *Codner v. Choate*, No. 20-CV-01050-PAB, 2020 WL 2769938, at *6 (D. Colo. May 27, 2020) ("However, if detention itself is lawful, but the surrounding circumstances are not, release is not the only possible remedy: conditions can be improved to make them constitutional."); *Dawson v. Asher*, 2020 WL 1304557, at *1 (W.D. Wash. Mar. 19, 2020); *Toure v. Hott*, No. 20-395, 2020 WL 2092639, at *9 (E.D. Va. Apr. 29, 2020) (noting that when conditions of confinement are challenged, "injunctive relief … would require any deficient conditions of confinement be cured as opposed to release."); *O.M.G. v. Wolf*, No. CV 20-786 (JEB), 2020 WL 4201635, at *12 (D.D.C. July 22, 2020) ("Because Petitioners have not clearly shown that narrower remedies such as these would not rectify the due-process violations they allege, the Court concludes that they are not, at this juncture, entitled to an injunction ordering their release.")

Courts that do consider COVID-19 conditions of confinement claims under § 2241 generally require petitioners to demonstrate that no court-ordered remedy other than their release will do. *See Toure*, 2020 WL 2092639, at *9 ("[W]hile Plaintiffs have pled and argued that release is the only remedy that could cure the harm they complain of, they have not shown that to be the case."); *Dawson v. Asher*, 2020 WL 1304557, at *1 (W.D. Wash. Mar. 19, 2020) ("[E]ven if Plaintiffs could show a Fifth Amendment violation, Plaintiffs provide no authority under which such a violation would justify immediate release, as opposed to injunctive relief that would leave Plaintiffs detained while ameliorating any alleged violative conditions within the facility"); *Codner v. Choate*, No. 20-CV-01050-PAB, 2020 WL 2769938, at *6 (D. Colo. May 27, 2020); *Urdaneta v. Keeton*, No. 20-654, 2020 WL 2319980, at *12 (D. Ariz. May 11, 2020) (denying release because "Court [was] unable to conclude that there is no set of conditions short of release that would be sufficient to protect Petitioner's constitutional rights"); *Jones v. Wolf*, No. 20-361, 2020 WL 1643857, at *14 (W.D.N.Y. Apr. 2, 2020) (denying habeas relief because "Court [was] not convinced that the unconstitutional conditions at [an ICE detention facility] cannot be remedied through an injunction"); *Banks v. Booth*, No. 20-849, 2020 WL 1914896, at *15 (D.D.C. Apr. 19, 2020) (finding inmate plaintiffs "entitled to . . . injunctive relief" aimed at improving conditions in response to COVID-19, but concluding that "the immediate release of inmates . . . is inappropriate at this time").

Although this argument was raised by Respondents, Petitioner has not shown cause why the Court could not order (in a § 1983 case) improvements to his conditions of confinement, such as social distancing, mask use, disinfection, improved screening, or testing. Petitioner simply asserts that the current environment is inadequate.

    **B.**    **Legal Standard for Fifth Amendment Due Process Claim.**

The parties appear to agree that Fifth Amendment Due Process law applies to this condition of confinement claim brought by a civil detainee.[2] *See* **Doc. 2 at 11; Doc. 20 at 9-10.**

The Due Process Clause of the Fifth Amendment forbids the government from depriving a person of life, liberty, or property without due process of law. U.S. Const. amend. V. Civil detainees such as Petitioner are protected by the Fifth Amendment Due Process clause. *Zadvydas v. Davis*, 533 U.S. 678, 690, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001). To evaluate the constitutionality of pretrial detention under the Fifth Amendment, the Court must determine whether the conditions "amount to punishment of the detainee." *Bell v. Wolfish*, 441 U.S. 520, 535, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). In the absence of an expressed intent to punish, Petitioner can prevail by showing that the conditions are not "rationally related to a legitimate nonpunitive governmental purpose" or that the conditions "appear excessive in relation to that purpose." *Kingsley v. Hendrickson*, 576 U.S. 389, 135 S. Ct. 2466, 2473, 192 L.Ed.2d 416 (2015) (quoting *Bell*, 441 U.S. at 561, 99 S.Ct. 1861); *See also Colbruno v. Kessler*, 928 F.3d 1155, 1163 (10th Cir. 2019) ("Persons who are civilly detained "can establish a due-process violation by providing only objective evidence that the challenged governmental action is not rationally related to a legitimate governmental objective or that it is excessive in relation to that purpose."). "[I]f a restriction or condition is not reasonably related to a legitimate goal—if it is arbitrary or purposeless—a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees *qua* detainees." *Bell v. Wolfish*, 441 U.S. 520, 539, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979).

The Government has a legitimate interest in enforcing immigration laws and detaining persons pending removal. *Jennings v. Rodriquez*, 138 S.Ct. 830, 836 (2018) ("Detention during

---

[2] Because the Court finds that Petitioner has failed to show a violation of Fifth Amendment Due Process claim, he also fails to show a violation of the more stringent Eighth Amendment Deliberate Indifference standard.

11

[immigration] proceedings gives immigration officials time to determine an alien's status without running the risk of the alien's either absconding or engaging in criminal activity before a final decision can be made."); *Demore v. Kim*, 538 U.S. 510, 520-23 (2003) ("[T]his Court has recognized detention during deportation proceedings as a constitutionally valid aspect of the deportation process."); *Zadvydas v. Davis*, 533 U.S. 678, 690-91 (2001). Here, the Government has a legitimate interest in detaining Petitioner pending his fourth removal and the reinstatement of his standing removal order. If the Government could not detain persons pending removal, its ability to enforce immigration laws and remove persons would be thwarted by individuals such as Petitioner, who repeatedly ignores immigration and criminal laws.

Moreover, the government has a legitimate interest in managing detention facilities, *Kingsley*, 135 S. Ct. at 2473 (citing *Bell*, 441 U.S. at 540, 99 S.Ct. 1861), and allocating scarce resources. *Swain v. Junior*, 961 F.3d 1276, 1293 (11th Cir. 2020). However, the Government has no legitimate interest in punishing civil detainees or denying necessary medical care. *Whitley v. Albers*, 475 U.S. 312, 320, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986) (the government's "responsibility to attend to the medical needs of prisoners does not ordinarily clash with other equally important governmental responsibilities"). The Government must also provide for the basic needs of civil detainees. *DeShaney v. Winnebago County Dept. of Social Services*, 489 U.S. 189, 200, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989).

"Therefore, conditions which pose an objectively unreasonable and substantial risk of serious harm to detainee health or safety are not rationally related to a legitimate nonpunitive government purpose." *Urdaneta v. Keeton*, No. CV2000654PHXSPLJFM, 2020 WL 2319980, at *9 (D. Ariz. May 11, 2020). However, Respondents are not obligated to provide perfect conditions. Rather, to constitute a constitutional violation conditions must be "objectively

unreasonable." *Kingsley*, 135 S.Ct. at 2473; *Cox v. Glanz*, 800 F.3d 1231, 1247-49 (10th Cir. 2015) ("Prison and jail officials, as well as the municipal entities that employ them, cannot absolutely guarantee the safety of their prisoners."). The Fifth Amendment does not require detention facilities to reduce the risk of harm to zero. *See, e.g., O.M.G. v. Wolf*, No. CV 20-786 (JEB), 2020 WL 4201635, at *9 (D.D.C. July 22, 2020), *citing C.G.B.,* 2020 WL 2935111, at *23 (quoting *Benavides v. Gartland*, No. 20-46, 2020 WL 1914916, at *5 (S.D. Ga. Apr. 18, 2020)); see also *Dawson*, 2020 WL 1704324, at *12.

    **C.    Conditions of Confinement are objectively reasonable in light of legitimate government interests.**

Even if Petitioner's conditions of confinement claim could properly be considered in a habeas petition, Petitioner has not shown that Otero failed to take adequate steps to ensure Petitioner's health and safety in light of the COVID-19 pandemic. Considering the law above in Section II(B), the Court concludes that the COVID-19 measures and conditions at Otero are objectively reasonable and rationally related to legitimate government interests.

Initially, the Court is not convinced that Petitioner's health and medical conditions place him at such an increased risk of serious illness or death as to mandate release. In the Motion, Petitioner proceeded on the basis that he has hypertension and did not mention any other condition. Respondents cited case law that hypertension, on its own, does not justify release based on increased risk. **Doc. 20 at 11-14.** At the time of the response, hypertension was not a COVID-19 risk factor. Although the CDC website has since been updated, the CDC still support's Respondents' position. The CDC lists some underlying medical conditions which *do* increase the

risk of severe illness and several conditions which *might* increase risk.[3] The CDC provides that hypertension by itself *might* result in an increased risk for severe illness:

> Many patients with severe illness from COVID-19 have underlying hypertension. Hypertension is common in the United States. Hypertension is more frequent with advancing age and among non-Hispanic blacks and people with other underlying medical conditions such as obesity and diabetes. At this time, people whose only underlying medical condition is hypertension might be at increased risk for severe illness from COVID-19.

https://www.cdc.gov/coronavirus/2019-ncov/hcp/faq.html#Patients-with-Hypertension (last accessed August 18, 2020). In a reply, for the first time, Petitioner asserts he is also obese, with a BMI of 32. According to the CDC, obesity is an underlying condition. Given Petitioner's age and health, the Court does not find that his obesity and hypertension mandate that Petitioner cannot be held in confinement, no matter what conditions are imposed.

Nevertheless, even if the Court accepts that Petitioner is medically vulnerable to COVID-19, he fails to show that the measures taken by Otero are inadequate. The Court finds that (1) contact with the community is suspended **Doc. 20-1 at ¶ 27**; (2) incoming detainees are screened and separated or quarantined *Id.* **at ¶¶ 13-18**; (3) Petitioner is socially distanced in his own cell and in a small pod *Id.* **at ¶ 30**; (4) the capacity of Otero (33%) is low enough to allow for social distancing **Doc. 20-1 at ¶ 7**; (5) guards and detainees have access to hand sanitizer, soap, sinks, and personal protective equipment such as masks *Id.* **at ¶¶ 20, 23, 24**; (6) guards monitor detainees so that they socially distance *Id.*; (7) Otero explains social distancing, hygiene, and COVID-19 information to detainees *Id.* **at ¶ 21**; and (8) surfaces are disinfected *Id.* **at ¶ 20.**

As of June 11, 2020, Petitioner was housed in the restricted housing unit where he had his own cell. *Id.* **at ¶ 30.** Seven detainees were assigned to that unit. In a supplemental affidavit,

---

[3] *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html (last accessed August 17, 2020)

14

Petitioner asserted that he would be returned to a dormitory in which it was impossible to socially distance. **Doc. 23-3 at 4.** It is unclear from the affidavits whether Petitioner would be socially distanced in his new dormitory. In a prior dormitory, there were 25 detainees for approximately fifty beds, and Petitioner asserts that social distancing was not possible as beds were approximately 3 feet away from each other. **Doc. 23-3 at 4.** However, detainees can be assigned to beds that are separated by six feet**. Doc. 20-1 at ¶ 7.** The Court finds that Petitioner is adequately socially distanced. To the extent he is not, he has not explained why the Court could not order, in a § 1983 action, Respondents to adequately social distance detainees.

The Court finds these social distancing measures are adequate, even though not perfect, given that (1) Otero currently has zero active cases and (2) screening, quarantine, and separation measures take place to ensure that new detainees do not infect Petitioner. **Doc. 20-1** at ¶ 14 ("All new detainee admissions are then assigned to a staggered housing location for 14-day medical observation. **This staggered housing assignment keeps newly admitted detainees from congregating with the general population.**") (emphasis added). Moreover, guards who do interact with detainees are given personal protective equipment, including N95s and gloves. The Court notes that Otero's measures appear to be working at this time. According to ICE, there are currently zero active cases at Otero County Processing Center.[4] The Court will not order Petitioner's release because it is *possible* that an outbreak may occur.

Therefore, these conditions are objectively reasonable in light of the Government's interest managing the detention facility and detaining Petitioner pending removal. Respondents' measures, and the conditions at Otero, are objectively reasonable. *See, e.g., Cameron v. Bouchard*, No. 20-1469, 2020 WL 3867393, at *6 (6th Cir. July 9, 2020) (as to fourteenth amendment claim, where

---

[4] As noted above, this statistic was taken from https://www.ice.gov/coronavirus (last accessed August 17, 2020), a website cited by Respondents. *See* **doc. 20 at 15-16.**

subjective component of deliberate indifference did not apply, BOP's response was objectively reasonable even without perfect testing or social distancing)[5]; *See also Wilson v. Williams*, No. 20-3447, — F.3d —, 2020 WL 3056217, at *8 (6th Cir. June 9, 2020) (finding prison officials' COVID-19 prevention measures to be a reasonable response to the risk posed by the disease, despite the fact that 59 inmates and 46 staff members had tested positive, and 6 inmates had died). Given Petitioner's prior immigration violations and criminal arrests, it is unclear whether Petitioner would comply with conditions of release or appear for his deportation.

The Court notes that Petitioner disputes some of Respondents' facts and provided competing affidavits. The Court finds Respondents' affidavit more credible. **Doc. 20-1**. Petitioner provided an affidavit from Rolando Matamora Garcia, a former detainee at Otero. He left Otero on May 1, 2020, and the Court does not have confidence that it reflects the conditions currently at Otero. To the extent this affidavit conflicts with the Respondents' Zuzunagha affidavit **(Doc. 20-1),** the Court finds Zuzunagha's affidavit more credible. The affidavit of Isaac Amon **(Doc. 1-2)** does not appear to analyze the specific conditions in Otero as set forth in the Zuzunagha affidavit.

---

[5] The Sixth Circuit found the following measures reasonable:
[I]mplement[ing] measures to screen inmates for the virus; isolat[ing] and quarantin[ing] inmates who may have contracted the virus; limit[ing] inmates' movement from their residential areas and otherwise limit[ing] group gatherings; conduct[ing] testing in accordance with CDC guidance; limit[ing] staff and visitors and subject[ing] them to enhanced screening; clean[ing] common areas and giv[ing] inmates disinfectant to clean their cells; provid[ing] inmates continuous access to sinks, water, and soap; educat[ing] staff and inmates about ways to avoid contracting and transmitting the virus; and provid[ing] masks to inmates and various other personal protective equipment to staff.
*Cameron v. Bouchard*, No. 20-1469, 2020 WL 3867393, at *6 (6th Cir. July 9, 2020) (measures sufficient for Fourteenth Amendment Due Process standard even if subjective prong does not apply). These measures are similar, or the same, as the ones in this case.

Petitioner's supplemental brief in part recounts prior measures by Otero which were subsequently changed. For example, detainees from different dorms no longer mix in a cafeteria. Rather, detainees eat meals in their dorms and guards bring them their meals. **Doc. 23-3 at 4.**

Petitioner argues that Otero fails to test each new detainee. However, Otero screens and then quarantines new detainees from the general population, and places guards in personal protective equipment. This is a reasonable precaution to prevent new detainees from infecting Petitioner. **Doc. 20-1 at ¶¶ 13, 14.**

In a reply, Petitioner provided the affidavit of a former detainee who was released on June 14, 2020. *See* Declaration of Franklin Gomez Carranza, **Doc. 23-2.** Mr. Gomez Carranza contracted COVID-19 while detained at the Otero County Processing Center. The Court finds that his affidavit does not tend to rebut the Court's findings above or the Zuzunagha affidavit.

### III.     Remaining Preliminary Injunction Factors

Because the Court finds that Petitioner has failed to show a substantial likelihood of success on the merits, Petitioner's motion for preliminary injunction necessary fails. *Dine Citizens Against Ruining Our Env't v. Jewell*, 839 F.3d 1276, 1282 (10th Cir. 2016). Nevertheless, the Court notes Petitioner also fails on the remaining preliminary injunction factors.

Petitioner has not shown that he is likely to suffer irreparable injury if the Court denies the preliminary injunction. As noted above, there are currently zero active cases in Otero. Respondents have taken measures to screen, quarantine or separate incoming detainees. Guards wear N95 masks and PPE. Petitioner is 33 years old with hypertension and is obese. Although Petitioner argues he *could* contract COVID-19 and suffer harm, showing the mere possibility of injury is not sufficient under the preliminary injunction standard. *See Winter v. Natural Resources Defense Council*, 555 U.S. 7, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008) ("Issuing a preliminary

injunction based only on a possibility of irreparable harm is inconsistent with [the Supreme Court's] characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief.").

As to the third and fourth factors, Petitioner must "make a strong showing that his threatened injury outweighs any injury to [Respondents] caused by granting the injunction." *Awad v. Ziriax*, 670 F.3d 1111, 1131 (10th Cir. 2012). The third and fourth preliminary injunction factors "merge" when the government is the party opposing the injunction. *Nken v. Holder*, 556 U.S. 418, 435, 129 S.Ct. 1749, 173 L.Ed.2d 550 (2009). In the immigration context, the Supreme Court has consistently upheld the constitutionality of detention, citing the government's legitimate interest in protecting the public and preventing aliens from absconding into the United States and never appearing for their removal proceedings. *See Jennings v. Rodriguez*, 138 S. Ct. 830, 836 (2018); *Demore v. Kim*, 538 U.S. 510, 520-22 (2003); *Zadvydas v. Davis*, 533 U.S. 678, 690-91 (2001). Nor is detention pending removal an "excessive" means of achieving those interests. Detention is a "constitutionally valid aspect of the deportation process." *Demore*, 538 U.S. at 523.

Here, Petitioner has not made a showing that the balance of harms tips in his favor. The "Supreme Court has recognized that the public interest in enforcement of the immigration laws is significant." *Blackie's House of Beef, Inc. v. Castillo*, 659 F.2d 1211, 1221 (D.C. Cir. 1981) (collecting cases). The Government is in the process of removing Petitioner to Peru and appears to be in the process of scheduling flights. It appears that a final removal order has been issued or a standing removal order will be renewed. **Doc. 20-2 at 1-3.** The Government has a substantial interest in executing removal orders. Petitioner's release from Otero would likely interfere with the removal process. Given Petitioner's repeated violations of immigration and criminal law, the Court is not confident that conditions of release could be fashioned to ensure his appearance for

removal. The Court agrees with the Respondents that the mere possibility of harm faced by Petitioner, as stated above, does not outweigh the Government's strong interest in enforcement of immigration laws.

### IV.     **Alternative relief in reply brief denied without prejudice.**

Finally, Petitioner requests for the first time in a reply brief that the Court issue a preliminary injunction to modify conditions of confinement, if the Court declines to release him. Petitioner does not clearly set forth the requested relief. The Court denies this request without prejudice, because (1) it was requested for the first time in a reply brief and (2) a § 1983 claim was not raised in the habeas petition and the requested relief was not raised in the petition. The Court may not order preliminary injunctive relief on a claim not raised in the complaint or petition.

### CONCLUSION

Petitioner failed to show that he is substantially likely to succeed on the merits. His claim is not cognizable under § 2241 because he merely challenges conditions of confinement which could be altered under a meritorious § 1983 suit. Alternatively, Petitioner is not substantially likely to succeed on the merits because (1) he failed to show why lesser remedies other than release would be insufficient and (2) failed to show that the conditions of confinement amounted to a punishment in violation of the Due Process clause of the Fifth Amendment. The remaining factors also counsel against preliminary injunctive relief.

**IT IS THEREFORE ORDERED** that Petitioner's Motion for Temporary Restraining Order **(Doc. 2)** is **DENIED.**

_____
KEA W. RIGGS
UNITED STATES DISTRICT JUDGE